**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PROCEEDING BEFORE THE COURT** | : | |
| **OF COMMON PLEAS OF PHILADELPHIA** | : | **CIVIL ACTION** |
| **TO DETERMINE THE PROPRIETY OF THE** | : | |
| **DEFENDER ASSOCIATION OF** | : | |
| **PHILADELPHIA'S REPRESENTATION OF** | : | |
| **WILLIAM JOHNSON** | : | |
| _____ | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM JOHNSON,** | : | **No. 13-2242** |
| **Defendant.** | : | |

**[PROPOSED] ORDER**

AND NOW, this          day of                          , 2013, upon consideration of the

Commonwealth of Pennsylvania's motion to remand, and any answer thereto, it is hereby

**ORDERED** that the motion to remand is **GRANTED**, and this matter is **REMANDED** to the

Court of Common Pleas of Philadelphia County.

**BY THE COURT**:


_____

**Berle M. Schiller, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PROCEEDING BEFORE THE COURT** | : | |
| **OF COMMON PLEAS OF PHILADELPHIA** | : | **CIVIL ACTION** |
| **TO DETERMINE THE PROPRIETY OF THE** | : | |
| **DEFENDER ASSOCIATION OF** | : | |
| **PHILADELPHIA'S REPRESENTATION OF** | : | |
| **WILLIAM JOHNSON** | : | |
| _____ | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM JOHNSON,** | : | **No. 13-2242** |
| **Defendant.** | : | |


**THE COMMONWEALTH OF PENNSYLVANIA'S MOTION TO REMAND**

This matter should be remanded to the Court of Common Pleas of Philadelphia County because:

1. The Defender Association has not been "acting under" a federal official when appearing in state court.

2. Abstention is warranted.

Respectfully submitted,

/s/ *Peter Carr*
Peter Carr
Assistant District Attorney
Hugh J. Burns, Jr.
Chief, Appeals Unit
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
hugh.burns@phila.gov
(215) 686-5766

Date:   May 24, 2013                *Attorneys for the Commonwealth*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PROCEEDING BEFORE THE COURT** | : | |
| **OF COMMON PLEAS OF PHILADELPHIA** | : | CIVIL ACTION |
| **TO DETERMINE THE PROPRIETY OF THE** | : | |
| **DEFENDER ASSOCIATION OF** | : | |
| **PHILADELPHIA'S REPRESENTATION OF** | : | |
| **WILLIAM JOHNSON** | : | |
| _____ | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM JOHNSON,** | : | No. 13-2242 |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE COMMONWEALTH'S MOTION TO REMAND**

Peter Carr
Assistant District Attorney
Hugh J. Burns, Jr.
Chief, Appeals Unit
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
hugh.burns@phila.gov
(215) 686-5766
*Attorneys for the Commonwealth*

Date: May 24, 2013

## CONTENTS

AUTHORITIES ................................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

ARGUMENT .................................................................................................................... 3

    I.     The FCDO does not "act under" a federal official when it appears in state court for state post-conviction proceedings. ......................................................................... 3

    II.    Abstention is required under *Younger v. Harris*. .................................................. 11

CONCLUSION ................................................................................................................ 15

CERTIFICATE OF SERVICE

Exhibit 1: Order, *Commonwealth v. Johnson*, 532 CAP (Pa. Jan. 4, 2013)

Exhibit 2: FCDO's Response, 1/13/13

Exhibit 3: Order, *Commonwealth v. Johnson*, 532 CAP (Pa. Mar. 25, 2013)

Exhibit 4: Order, *Commonwealth v. Mitchell*, 617 CAP (Pa. Jan. 10, 2013)

# AUTHORITIES

## Cases

*Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3d Cir. 1990) .............................................................. 4

*City of Greenwood v. Peacock*, 384 U.S. 808 (1966) ...................................................................... 4

*Commonwealth v. Johnson*, 668 A.2d 97 (Pa. 2005) ...................................................................... 1

*Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191 (2d Cir. 2002) ........................................ 12

*Dixon v. Georgia Indigent Legal Services, Inc.*, 388 F.Supp. 1156 (D.Ga. 1974) ......................... 11

*Feidt v. Owens Corning Fiberglas Co.*, 153 F.3d 124 (3d. Cir. 1998) .............................................. 4

*Ferri v. Ackerman*, 444 U.S. 193 (1979) ................................................................................. 6, 8

*Gurda Farms, Inc. v Monroe County Legal Assistance Corp.*, 358 F.Supp. 841 (S.D.N.Y. 1973) . 11

*Hoover v. Ronwin*, 466 U.S. 558 (1984) ...................................................................................... 12

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ............................................................................ 13

*Jefferson County v. Acker*, 527 U.S. 423 (1999) ...................................................................... 7, 14

*Maryland v. Soper*, 270 U.S. 36 (1926) ........................................................................................ 6

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992) ....................................................... 14

*Middlesex County Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ...................... 12

*Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010) .......................................................................... 12

*Pennsylvania v. Finley,* 481 U.S. 554 (1987) ................................................................................ 5

*Polk County v. Dodson*, 454 U.S. 312 (1981) .......................................................................... 6, 11

*Puerto Rico v. Marrero*, 624 F. Supp. 308 (D.P.R. 1985) ............................................................ 13

*Quackenbush v. Allstate Ins. Co.*, U.S. 517 U.S. 706 (1996) ......................................................... 14

*Screws v. United States*, 325 U.S. 91 (1945) ................................................................................. 6

*United States*, 424 U.S. 800 n. 22 (1976) .................................................................................... 12

*Watson v. Phillip Morris, Inc.*, 551 U.S. 142 (2007) .............................................................. passim

*Willingham v. Morgan*, 395 U.S. 402 (1969) ...................................................................... 6

*Younger v. Harris*, 401 U.S. 37 (1971) .............................................................................. 12

**Statutes**

18 U.S.C. § 3599 ..................................................................................................................... 2

28 U.S.C. § 1331 ................................................................................................................... 13

28 U.S.C. § 1442 ........................................................................................................... passim

**Other Authorities**

Franklin D. Cleckley, *Clearly Erroneous: The Fourth Circuit's Decision to Uphold Removal of a State-Bar Disciplinary Proceeding Under the Federal-Officer Removal Statute*, 92 W. Va. L. Rev. 577 (Spring 1990) ................................................................................................. 14

## INTRODUCTION

The Pennsylvania Supreme Court *sua sponte* ordered the Court of Common Pleas of Philadelphia County to consider whether the Capital Habeas Unit of the Defender Association of Philadelphia, a Federal Community Defender Organization ("FCDO"), should be disqualified from appearing in state court on a state post-conviction matter to which no court had appointed it. Thereafter, the FCDO removed the disqualification matter from state court to this Court, invoking the federal officer removal provision of 28 U.S.C. § 1442(a)(1). As set forth below, this case must be remanded to state court because: (1) the FCDO is not "acting under" a federal officer when it represents state prisoners in state court, and therefore is not entitled to federal officer removal of state proceedings related to such representation; and (2) this removed action is improperly interfering with an important and ongoing state proceeding in which the FCDO is fully capable of raising any federal defenses it thinks it may have.

## BACKGROUND

The salient facts and procedural history are not complicated. William Johnson, a Pennsylvania state inmate who was convicted of first-degree murder, *see Commonwealth v. Johnson*, 668 A.2d 97 (Pa. 2005) (opinion on direct appeal), filed an appeal in the Pennsylvania Supreme Court from an order of the Court of Common Pleas denying guilt-phase relief on a petition for state post-conviction relief. He is represented in those state proceedings by attorneys from the FCDO.

On January 4, 2013, the Pennsylvania Supreme Court *sua sponte* ordered the FCDO to "produce a copy of any federal appointment order it may have secured in this matter...." Ex. 1. The FCDO responded by admitting it "does not have a federal appointment order" for the case,

1

and asserting without further elaboration that it is representing Johnson in state court "per his request." Ex. 2.[1]

On March 25, 2013, the Pennsylvania Supreme Court remanded the state post-conviction matter to the Court of Common Pleas for further consideration of Johnson's petition for relief. Ex. 3 at p. 1. In addition, the Pennsylvania Supreme Court *sua sponte* directed the Court of Common Pleas to determine whether the FCDO should be allowed to remain as counsel in the state proceeding, "or whether other appropriate post-conviction counsel should be appointed, as there is no federal court order authorizing current counsel's involvement in these state court proceedings." Ex. 3 at p. 3 (citing 18 U.S.C. § 3599(a)(2)). This order came in the wake of a similar order in *Commonwealth v Isaac Mitchell*, another state post-conviction case in which the Pennsylvania Supreme Court directed the Court of Common Pleas to determine whether the FCDO, which also was representing a state-court litigant without an appointment order in that case, was privately-financing its state-court litigation, as it claimed. Ex. 4 at p. 1-2.

On April 24, 2013, the FCDO removed the potential state-court disqualification proceeding in Johnson's case to this Court. As set forth below, that removal was improper, and the matter must be remanded to state court.

---

[1] The FCDO's response was curious, given that it advises the public that it "cannot provide legal advice to anyone unless the court has formally appointed [the] office as legal counsel," "Defender FAQs," *available at* http://pae.fd.org/FAQ.html (last visited Apr. 12, 2013), and "has no power to appoint itself as legal counsel." "Defender Association of Philadelphia – About Us," *available at* http://www.philadefender.org/about-us.php (last visited Apr. 12, 2013). *See also* Model Code of Conduct for Federal Community Defender Employees, Canon 5(D) ("A defender employee should not engage in the private practice of law" but "may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the defender employee's family…."). Nevertheless, neither the Commonwealth nor the Pennsylvania Supreme Court opposes the FCDO's appearance in state court in the *Johnson* and *Mitchell* cases if those appearances actually are privately financed.

2

**ARGUMENT**

**I.     The FCDO does not "act under" a federal official when it appears in state court for state post-conviction proceedings.**

Remand to state court is necessary because the FCDO does not meet the requirements of 28 U.S.C. § 1442(a)(1) for federal officer removal. The statutory phrase "acting under" a federal official requires a private party seeking removal to have been providing affirmative assistance to the federal government in the conduct giving rise to the state action; it is not sufficient that the party was acted *upon* by the federal government through regulations, or that the party provided assistance to the federal government in other contexts not implicated by the proceeding it seeks to remove. When the FCDO appears in state court for state post-conviction proceedings, it is not "acting under" any federal officer because, in that context, it is not providing any help or assistance to the federal government. Consequently, it is not entitled to remove state actions that are based on its conduct in appearing in state court for state post-conviction proceedings.

Section 1442(a)(1) provides authority for the United States, its agencies, and the officers thereof, as well as persons "acting under" officers of the United States, to remove civil actions and criminal prosecutions under certain circumstances:

> **(a)** A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> **(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442.

3

Here, the FCDO does not claim to be "[t]he United States or any agency thereof or any officer … of the United States or of any agency thereof." *Id*. Rather, it contends that it is "acting under" a federal officer—presumably the Administrative Office of the United States Courts ("Administrative Office")—when it appears in state court. Dkt. No. 1, p. 6, ¶ 15. To justify federal removal jurisdiction on that basis, the FCDO bears the burden to "establish that (1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office[r]; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Co.*, 153 F.3d 124, 127 (3d. Cir. 1998). *See also Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) ("[A] party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists").

The FCDO cannot satisfy the second of these requirements—that it is "acting under" a federal "officer … act[ing] under color of such office," 28 U.S.C. § 1442(a)(1)—when the conduct in question involves appearing in state-court proceedings to which it was not appointed. A person, whether corporate or natural, "acts under" a federal officer when the private party "assist[s], or [helps to] carry out, the duties or tasks of the federal superior." *Watson v. Phillip Morris, Inc.*, 551 U.S. 142, 152 (2007) (emphasis omitted). That is, a person acts under a federal officer "'only' if the private part[y] [was] 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under ... federal law.'" *Id*. at 151, *quoting City of Greenwood v. Peacock,* 384 U.S. 808, 824 (1966) (alterations supplied by the Court).

The fundamental problem with the FCDO's attempt to invoke federal officer removal in Johnson's state case is that neither the Administrative Office nor any other federal officer is

tasked with representing, or has a duty to represent, state prisoners in their state post-conviction appeals. The responsibility for litigating state post-conviction proceedings, and thereby incidentally preserving claims for any future habeas review, belongs not to the federal government but to the litigants themselves. Nor does the federal government have any responsibility to provide counsel for state post-conviction proceedings. There is no federal constitutional right to counsel on a state post-conviction appeal, *Pennsylvania v. Finley*, 481 U.S. 554, 557 (1987), and, even if there were such a right, the responsibility for its implementation would belong to the states.

Were preserving claims for federal habeas review enough to confer the status of "acting under" a federal official, *all* attorneys litigating state post-conviction petitions—not just the attorneys from the FCDO—would qualify for federal officer removal, as would *pro se* state prisoners. But, of course, that is not the reality. Since there is no federal entity responsible for litigating state post-conviction proceedings, and thereby preserving claims for federal habeas review, it necessarily follows that defense attorneys and *pro se* litigants are not "assist[ing], or help[ing] to carry out, the duties or tasks of the federal superior," *Watson*, 551 U.S. at 152 (original brackets omitted), when they pursue state post-conviction petitions and appeals on behalf of their clients or themselves.

The FCDO's answer apparently is that it is in a unique position, distinct from other state post-conviction attorneys and litigants, because Federal Community Defender Organizations are "funded for the purpose of assisting the federal government in providing representation to indigent defendants *in federal criminal proceedings*, including habeas corpus proceedings," which is "a service that 'the Government itself would have to perform….'" Dkt. No. 1, p. 8, 9 ¶¶

20, 23 (emphasis added), *quoting Watson*, 551 U.S. at 154. As an initial matter, this position—that public defenders act on behalf of the government because they are funded by the government to provide a necessary service—already has been rejected by the Supreme Court in analogous contexts. While the Supreme Court has not yet addressed whether public defenders may qualify for federal officer removal, it has held that public defenders do not act "under color of law," and may not assert the defense of federal officer immunity, because the source of their funding does not alter the fact their function is *adverse* to the government. *See Polk County v. Dodson,* 454 U.S. 312, 317-18 (1981) (holding that public defenders do not act "under color of law" because the relationship between a public defender and her client, "[e]xcept for the source of payment, … [is] identical to that existing between any other lawyer and client"; "[i]n our system a defense lawyer characteristically opposes the designated representatives of the State" and "best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of his client'");[2] *Ferri v. Ackerman*, 444 U.S. 193, 199-200,

---

[2] *Dodson* is particularly instructive because the "acting under color of [ ] office" requirement for removal under Section 1442 is, if not equivalent to, *stricter* than the "color of" law requirement for Section 1983 actions. *See Screws v. United States*, 325 U.S. 91, 111-12 (1945) (comparing Section 1983 to predecessor removal statute, and deeming requirements of latter to be more demanding); *Maryland v. Soper*, 270 U.S. 36, 42 (1926) (under predecessor removal statute, acts of private entity "necessary to make the enforcement [of federal law] effective" must be done under "color" of law).

Section 1442 is the end-product of a series of congressional enactments beginning in the early years of the nation's history. *See Watson,* 551 U.S. at 147-148; *Willingham v. Morgan,* 395 U.S. 402, 405-06 (1969). Those predecessor statutes authorized removal of state-court actions brought against certain classes of federal officers, such as customs collectors and revenue officers, as well as persons assisting those officers in performing their official duties. Act of Feb. 4, 1815, ch. 31, §§ 6, 8, 3 Stat. 197-98 (removal by a federal customs officer and "any other person aiding or assisting" him); Act of Mar. 2, 1833, ch. 57, § 3, 4 Stat. 633 (removal by "any officer of the United States, or other person, for or on account of any act done under the revenue

(continued. . .

205 (1979) (explaining in the course of holding that defense attorneys appointed by federal courts are not entitled to absolute immunity of federal officer immunity, that, when Congress enacted the Criminal Justice Act, it "attempt[ed] to minimize the differences between retained and appointed counsel" and "intended all defense counsel to satisfy the same standards of professional responsibility and to be subject to the same controls").

But regardless, even if there sometimes are situations in which public defenders "act[ ] under" a federal official for purposes of Section 1442 because they are performing a task for which the federal government otherwise would be responsible—here, "providing representation to indigent defendants in *federal* criminal proceedings"—it does not follow that they also "act[ ] under" a federal official when performing other, separate tasks for which the federal government bears no responsibility. Rather, the plain meaning of the "acting under" requirement is precisely the opposite.[3]

---

laws of the United States"); Act of July 13, 1866, ch. 184, § 67, 14 Stat. 171-72 (removal of suit against revenue officer "on account of any act done under color of his office," or "any person acting under or by authority of any such officer" "for the collection of taxes"). In 1948, Congress expanded the right of removal to encompass all federal officers. Act of June 25, 1948, ch. 646, § 1442, 62 Stat. 938. But, "[w]hile Congress expanded the statute's coverage to include all federal officers, it nowhere indicated any intent to change the scope of words, such as 'acting under,' that described the triggering relationship between a private entity and a federal officer." *Watson,* 551 U.S. at 149. Thus, cases such *Screws* and *Soper* still define the requirements for a "triggering relationship" justifying removal.

[3] Since the issue is whether the FCDO was "acting under" a federal officer in the conduct giving rise to the state action, cases in which the removing parties were themselves federal officers, and the acting-under-a-federal-officer requirement therefore was inapplicable, are not instructive. *E.g., Jefferson County v. Acker*, 527 U.S. 423 (1999) (case removed by federal judges under Section 1442(a)(3), which does not contain any provision for private parties acting under a federal officer). Moreover, unlike the situation in cases such as *Jefferson County*, this Court would not have to effectively decide the merits of the removing party's federal defense before remanding here. The Commonwealth and the FCDO both *agree* that the FCDO may make

(continued. . .

7

By claiming to use private funds for purely state-court activities, the FCDO has effectively conceded away any plausible argument that it "acts under" the Administrative Office when appearing in state court. Dkt. No. 8-1, pp. 4-5.[4] Were the FCDO actually "acting under" the Administrative Office when it engages in activities "such as appearing at state court hearings," *id.* at p. 5 n.5, it would have no reason to use private funds or appear pro bono when doing so. Rather, it would be entitled to federal compensation from the Administrative Office. It is only because appearing in state court for state post-conviction proceedings is *not* a function "the [federal] Government itself would have to perform" in the FCDO's absence, *Watson*, 551 U.S. at 154, that the FCDO must claim to fund such appearances through private means.

Nor does the fact that federal entities issue guidelines to Federal Community Defender Organizations provide a basis for federal officer removal. In the first place, the Supreme Court made clear in *Watson* that mere "regulatory *compliance*" is not "assistance" to the federal government, and hence does not bring a private organization within the scope of the statutory phrase "acting under" a federal official. 551 U.S. at 157 (emphasis in original). *See also Ferri*, 444 U.S. at 201 (stating, in the context of an attempt by a public defender to assert an immunity defense available to federal officials: "Countless private citizens are the recipients of federal funds of one kind or another, but Congress surely did not intend that all such recipients would be immune for actions taken in the course of expending those funds").

---

privately-financed appearances in state court; the question in dispute—whether the FCDO's appearance in Johnson's state case actually is privately financed—is irrelevant to whether removal is statutorily justified.

[4] Of course, the Commonwealth does not concede the accuracy of the FCDO's claim that it uses private funds or acts pro bono when engaged in purely state-court activities. That is the very issue the Pennsylvania Supreme Court ordered the Court of Common Pleas to decide.

Moreover, as just discussed, by claiming to use private funds for purely state-court activities, the FCDO effectively concedes that the federal guidelines to which it is subject *prohibit* the use of federal funds for such state-court activities. Even if the FCDO were in fact complying with those federal prohibitions, that would not be nearly enough to justify federal officer removal. The statutory phrase ("acting under" a federal officer) demands more than just refraining from violating federal law; it requires providing affirmative *assistance* to the federal government. *See Watson*, 551 U.S. at 152 ("[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law") (emphasis in original). Regardless of whether the FCDO provides such assistance to the federal government when it represents indigent defendants in *federal* proceedings, it does not provide any assistance to the federal government when it represents indigent defendants in *state* proceedings, because no federal officer or entity otherwise would have the duty or task to furnish such (state-court) representation.

Under the circumstances, allowing the FCDO to remove the state disqualification matter would not be consistent with the fundamental purpose of federal officer removal, which is to avoid "[s]tate-court proceedings [that] may reflect 'local prejudice' against unpopular federal laws or federal officials." *Watson*, 551 U.S. at 150 (citations omitted). It would be nonsensical to assert that there is a serious risk that private parties would face local prejudice for *complying* with federal guidelines that *prohibit* the use of federal funding for purely state-court activity. *See id.* at 152 ("When a [private entity] subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court 'prejudice'") (parentheses in original). As the Pennsylvania Supreme Court's order in the related *Mitchell* case

9

makes clear, if the FCDO's claim to be using private funds for its purely state-court activities is substantiated, *i.e.*, if the FCDO is complying with federal law, it will be allowed to continue to appear in state court. Ex. 4, pp. 1-2.

Again, the Commonwealth does not concede that the FCDO actually is in compliance with federal law. And, of course, there could be no argument that federal officer removal exists to protect private parties who are *violating* federal law, even if they assertedly face "prejudice" for those violations, since such persons and entities are frustrating, rather than advancing, the interests and intent of the federal government. But even if the facts were as the FCDO alleges, *i.e.*, even assuming for argument's sake that the FCDO is complying with federal regulations by privately financing its purely state-court activities, such compliance is not enough to justify federal officer removal. *Watson*, 551 U.S. at 152.[5]

Finally, the pair of forty-year old decisions from other districts on which the FCDO relies does not support removal here. In the first of those cases, a district court in New York held that a legal services organization qualified for federal officer removal because the organization was funded and regulated by the federal government, and "the very project in question … [was] the

---

[5] The other purposes to federal officer removal do not warrant extended discussion under the circumstances of this case. There is no danger that the state-court disqualification proceeding will allow a "State[ ] hostile to the Federal Government [to] impede through delay federal revenue collection or the enforcement of other federal law" because: (a) the FCDO does not serve a law enforcement function; (b) as explained above, there is no federal official responsible for "enforc[ing] federal law" in state post-conviction proceedings; and (c) the disqualification proceeding does not implicate the ability of the FCDO to appear as Johnson's counsel in federal habeas proceedings, where federal officials (*i.e.*, federal judges) do "tak[e] necessary action designed to enforce federal law." *Watson*, 551 U.S. at 150. Moreover, since the FCDO has no right to the immunity defenses available to federal officials, and is not attempting to assert any such defense, there is no danger that "federal officials [will be deprived] of a federal forum in which to assert federal immunity defenses" if the disqualification proceeding takes place in state court. *Id.*

product of a specific congressional authorization." *Gurda Farms, Inc. v Monroe County Legal Assistance Corp.*, 358 F.Supp. 841, 847 (S.D.N.Y. 1973). And in the second case, decided a year later, a district court in Georgia adopted the New York district court's decision wholesale in the course of reaching an identical holding that "federally-funded legal assistance programs for the indigent act under officers of the United States within the meaning of the removal statute[.]" *Dixon v. Georgia Indigent Legal Services, Inc.*, 388 F.Supp. 1156, 1661 (D.Ga. 1974).

To the extent the FCDO attempts to apply those decisions to this context, in which a public defender organization purports to be "acting under" a federal officer when it represents a state prisoner in a state post-conviction proceeding, its effort is, for all the reasons set forth above, unavailing. Under the Supreme Court precedent cited above, which was not available to the courts on whose decisions the FCDO relies, a public defender assists his client, not the federal government, *Dodson,* 454 U.S. at 317-18; *Ferri*, 444 U.S. at 199-200, and particularly does not assist the federal government when appearing in *state* court because such appearances are not something the federal government "itself would have to perform" in the pubic defender's absence. *Watson*, 551 U.S. at 154. The FCDO does not satisfy the requirements of Section 1442 for federal officer removal.

## II.   Abstention is required under *Younger v. Harris*.

Because the FCDO has not validly invoked this Court's removal jurisdiction, there is no need to consider whether federalism principles require the Court to abstain from exercising such jurisdiction. But even if the FCDO satisfied the statutory requirements for removal under Section 1442, it would not be appropriate for this Court to exercise jurisdiction because to do so would

be to interfere with an ongoing state proceeding in which important state interests are implicated and an adequate opportunity exists for the FCDO to litigate any federal defenses.

As *Younger v. Harris,* 401 U.S. 37 (1971), and its progeny establish, there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Under that line of cases, federal courts must abstain from exercising jurisdiction if: (1) there is "an ongoing state judicial proceeding"; (2) "the proceedings implicate important state interests"; and (3) "there [is] an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* at 432. When the requirements of *Younger* are met, abstention is mandatory; a federal court has "no discretion" in the matter. *Colorado Water Conserv. Dist. v. United States,* 424 U.S. 800, 816 n. 22 (1976). *See also Miller v. Mitchell*, 598 F.3d 139, 145-46 (3d Cir. 2010) (federal courts "must abstain" when *Younger's* requirements are satisfied); *Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 197 (2d Cir. 2002) ("[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter").

There is no dispute that the three requirements for *Younger* abstention are met here. There is an ongoing state judicial proceeding: Johnson's state post-conviction proceeding, which effectively has been stayed by this removed action. Dkt. No. 1, p. 3 ¶ 5. It is beyond debate that both the post-conviction appeal and the attorney-disqualification proceeding being litigated within the context of that appeal implicate important state interests. *See, e.g.,  Hoover v. Ronwin*, 466 U.S. 558, 569 n.18 (1984) (describing "regulation of the bar" as "a sovereign function of the [State] Supreme Court," "at the core of the State's power to protect the public" and "essential to

the primary governmental function of administering justice") (citations omitted). And the FCDO is fully capable of litigating any federal claims it thinks it has in state court.

Unable to dispute that the usual requirements for *Younger* abstention are present, or establish that any recognized exception to the *Younger* doctrine applies, the FCDO's position seems to be that abstention is inappropriate because the removal statutes are "mandatory" in the sense that Sections 1442 and 1447 do not explicitly grant courts discretion or authority to apply the various abstention doctrines. But that is always true. Whether in a removed case or in an original action, a federal court applying *Younger* or any of the other abstention doctrines takes as a given that it has jurisdiction to hear the case, but nevertheless abstains from exercising that jurisdiction. For example, the language of the statute providing for original jurisdiction in cases presenting federal questions, 28 U.S.C. § 1331, is phrased in even more clearly "mandatory" terms ("*shall* have original jurisdiction") than 28 U.S.C. 1442, the statute providing for federal officer removal jurisdiction ("*may* be removed") but there is no question that the *Younger* doctrine nevertheless applies in that context. *See*, *e.g.*, *Huffman v. Pursue, Ltd*., 420 U.S. 592 (1975).[6]

---

[6] In *Puerto Rico v. Marrero*, 624 F. Supp. 308, 311 (D.P.R. 1985), a district court remarked that, at least as of twenty-eight years ago, "the doctrine of abstention [had never] been even remotely mentioned" in federal-officer removal cases. That was very possibly true at the time, but the reason *Younger* abstention would almost never be mentioned in removed cases is not that the removal statutes are unique in their "mandatory" language. It is that there typically is no longer an ongoing state proceeding in removed cases, since it is the state proceeding that has been removed. The situation at issue here, where a party attempts to remove a small part of a larger state criminal or post-conviction proceeding is quite rare—or at least was quite rare until the FCDO started doing so on a routine basis. But the novelty of the FCDO's maneuver is not a reason to inoculate it from *Younger*.

13

There is no reason why a party that removes a case to federal court would put the court in any different position from where it would have been had the party (or its opponent) originally brought an action in federal court. It is always true that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," but that duty "is not … absolute." *Quackenbush v. Allstate Ins. Co.*, U.S. 517 U.S. 706, 716 (1996). Whether a case has come to a federal court in its original jurisdiction or in its removal jurisdiction, the court still must consider the comity principles at the heart of *Younger*, and abstain from exercising jurisdiction if the requirements of *Younger* apply. *See, e.g., Jefferson County*, 527 U.S. at 435 n. 5 (noting, in case removed pursuant to Section 1442, that "abstention and stay doctrines may counsel federal courts to withhold jurisdiction" in some situations); *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1501-02 (8th Cir. 1992) (concluding, in case removed pursuant to Section 1441, that "the district court had the authority to remand this case to state court based on abstention, a reason not expressly articulated in § 1447(c)"); Franklin D. Cleckley, *Clearly Erroneous: The Fourth Circuit's Decision to Uphold Removal of a State-Bar Disciplinary Proceeding Under the Federal-Officer Removal Statute*, 92 W. Va. L. Rev. 577, 615-21 (Spring 1990) (persuasively arguing that, even in context of case removed pursuant to Section 1442, federal courts should abstain from exercising jurisdiction over state attorney-disciplinary matters).

Again, the FCDO does not meet the requirements for federal officer removal under Section 1442, but even if the FCDO satisfied Section 1442, *Younger* abstention would be warranted. The Commonwealth respectfully requests this Court to remand the removed action to state court.

14

**CONCLUSION**

This matter should be remanded to the Court of Common Pleas of Philadelphia County.

/s/ *Peter Carr*
Peter Carr
Assistant District Attorney
Hugh J. Burns, Jr.
Chief, Appeals Unit
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
hugh.burns@phila.gov
(215) 686-5766

Date:  May 24, 2013                    *Attorneys for the Commonwealth*

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PROCEEDING BEFORE THE COURT** | : | |
| **OF COMMON PLEAS OF PHILADELPHIA** | : | **CIVIL ACTION** |
| **TO DETERMINE THE PROPRIETY OF THE** | : | |
| **DEFENDER ASSOCIATION OF** | : | |
| **PHILADELPHIA'S REPRESENTATION OF** | : | |
| **WILLIAM JOHNSON** | : | |
| _____ | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM JOHNSON,** | : | **No. 13-2242** |
| **Defendant.** | : | |

**CERTIFICATE OF SERVICE**

The Commonwealth's motion to remand and supporting brief have been filed electronically, and are available for viewing and downloading by all counsel of record from the Electronic Case Filing System. In addition, I have caused a copy of the same documents to be served by first-class mail on the following person:

David Richman, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
*Attorney for the Defender Association of Philadelphia*

/s/ *Peter Carr*
Peter Carr
Assistant District Attorney
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
Three South Penn Square
Philadelphia, PA 19107
peter.carr@phila.gov
 (215) 686-5766
Date:   May 24, 2013        *Attorney for the Commonwealth*