IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: PROCEEDING BEFORE THE COURT :
OF COMMON PLEAS OF PHILADELPHIA : CIVIL ACTION
TO DETERMINE THE PROPRIETY OF THE :
DEFENDER ASSOCIATION OF :
PHILADELPHIA'S REPRESENTATION OF :
WILLIAM JOHNSON :
_____ :
COMMONWEALTH OF PENNSYLVANIA, :
   Plaintiff, :
:
  v. :
:
WILLIAM JOHNSON, : No. 13-2242
    Defendant. :

**REPLY BRIEF IN SUPPORT OF THE COMMONWEALTH'S MOTION TO REMAND**

                Peter Carr
                Assistant District Attorney
                Hugh J. Burns, Jr.
                Chief, Appeals Unit
                PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
                Three South Penn Square
                Philadelphia, PA 19107
                peter.carr@phila.gov
                hugh.burns@phila.gov
                (215) 686-5766
Date: June 20, 2013       *Attorneys for the Commonwealth*

# CONTENTS

AUTHORITIES ........................................................................................................................ ii

ARGUMENT IN REPLY .........................................................................................................1

    I.      The FCDO fails to carry its burden to establish that it meets the requirements for federal officer removal. ...................................................................................................1

        A.  The FCDO concedes the factual premise of the Commonwealth's motion, and makes a legal argument that directly contradicts longstanding Supreme Court precedent. ................................................................................................................1

        B.  The FCDO's defense, that it supposedly funds its extensive state-court practice by private means, does not arise under federal law. ............................................................4

        C.  The FCDO fails to distinguish this case from other situations in which the Supreme Court has held that public defenders are not federal officers and do not act "under color of … law." ........................................................................................10

    II.    The FCDO's response to the Commonwealth's abstention argument is unavailing.11

CONCLUSION.......................................................................................................................13

# AUTHORITIES

**Cases**

*Cleveland, C. & I. R. Co. v. McClung*, 119 U.S. 454 (1886) .......................................................... 7

*Ferri v. Ackerman*, 444 U.S. 193 (1979) ................................................................................ 11

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ............................................................................... 13

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ....................................................................... 12

*Jefferson County v. Acker*, 527 U.S. 423 (1999) .............................................................. 6, 7, 12

*Kentucky v. Graham*, 473 U.S. 159 (1985) ............................................................................... 2

*Maryland v. Soper*, 270 U.S. 9 (1927) .............................................................................. 3, 9, 10

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992) .................................................. 12

*Mesa v. California*, 489 U.S. 121 (1989) ................................................................................. 3, 8

*Mitchell v. Wetzel,* No. 11-cv-02063 ......................................................................................... 5, 8

*Polk County v. Dodson*, 454 U.S. 312 (1981) ........................................................................... 11

*Steel Valley Author. v. Union Switch and Signal Div.*, 809 F.2d 1006 (3d Cir. 1987) ................... 1

*Willingham v. Morgan*, 395 U.S. 402 (1969) ..................................................................... 6, 7, 9

*Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) ............................. 1

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................................................ 12, 13

**Statutes**

62 P.S. §1407 ........................................................................................................................... 13

28 U.S.C. § 1331 ...................................................................................................................... 12

28 U.S.C. § 1442(a)(1) ........................................................................................................ passim

**Other Authorities**

Franklin D. Cleckley, *Clearly Erroneous: The Fourth Circuit's Decision to Uphold Removal of a State-Bar Disciplinary Proceeding Under the Federal-Officer Removal Statute*, 92 W. Va. L. Rev. 577 (Spring 1990) ........................................................................................................ 12

## ARGUMENT IN REPLY

I. **The FCDO fails to carry its burden to establish that it meets the requirements for federal officer removal.**

The FCDO fails to carry its burden to establish that the requirements for federal officer removal are met in its response to the Commonwealth's motion to remand.[1] As set forth below, the FCDO: (A) concedes that the removed action is based on conduct outside the scope of any federal duties, even though longstanding Supreme Court precedent forecloses the possibility of removal under such circumstances; (B) relies on a defense that plainly does not arise out of its alleged status as an entity acting under a federal officer; and (C) fails to meaningfully distinguish Supreme Court precedent holding that public defenders are not "federal officers" and do not act "under color of … law."

A. **The FCDO concedes the factual premise of the Commonwealth's motion, and makes a legal argument that directly contradicts longstanding Supreme Court precedent.**

In the Commonwealth's motion to remand, it argued that, when the FCDO represents state prisoners in state post-conviction proceedings, it is not performing a federal function, *i.e.*, a function for which a federal officer would be responsible in the FCDO's absence. The FCDO responds by abandoning any argument that its federal contract "requires it to represent Mr. Johnson on his PCRA petition," Dkt. No. 15, p. 19—a move that effectively concedes the Commonwealth's point. *See also In re Commonwealth v. Mitchell Proceeding*, No. 2:13-cv-01871, Dkt. No. 25, p. 20 (FCDO concession in another removed case "that the conduct

---

[1] When faced with a motion to remand, it is the removing party's burden to establish compliance with the governing removal statute, and hence the existence of federal jurisdiction over the controversy. *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir. 1998); *Steel Valley Author. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

challenged by the Commonwealth lay outside the scope of the FCDO's federal contractual duties….," and that it therefore has no plausible argument "that in representing Mr. Mitchell in state court, his FCDO lawyers were discharging their federal contractual duties….").

The FCDO attempts to portray this concession as insignificant because federal officer removal supposedly "is not limited to state court actions against persons for their conduct in an official capacity," Dkt. No. 15, p. 16, but the FCDO is confused. Though it is true, as the FCDO states, that 28 U.S.C. § 1442(a)(1) speaks of suits against federal officers "in an official or individual capacity," the distinction between those classes of lawsuits is not, despite their names, that one concerns officers' conduct with respect to their official duties and the other does not. It is that individual-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," whereas official-capacity suits are "*not* a suit against the official personally, for the real party in interest is the [government] entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (emphasis in original). Official-capacity suits are not mere suits "against persons for their conduct in an official capacity," Dkt. No. 15, p. 16, but rather are suits against the government itself for allegedly maintaining policies or customs that were the moving force behind the plaintiff's injuries. *Graham*, 473 U.S. at 166.

Accordingly, Section 1442(a)(1)'s reference to "official or individual capacity" suits is of no relevance to any question before this Court. Whether the proceeding involves an individual-capacity suit, an official-capacity suit, or a criminal prosecution, to justify federal officer removal, "[i]t must appear that the … [state case] has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and *he must by direct averment*

2

*exclude the possibility that it was based on acts or conduct of his, not justified by his federal duty.*" *Maryland v. Soper*, 270 U.S. 9, 33 (1927) (emphasis added).

In other words, although federal officer removal "does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority," *i.e.*, the federal officer is entitled to deny having done the acts alleged and yet still seek removal, it *does* require that "his presence at the place *in performance of his official duty* constitute the basis, though mistaken or false, of the state prosecution." *Id*. (emphasis added). It is not enough for purported federal officers to aver that the conduct "on account of which they are … [facing a state civil action or criminal prosecution] was at a time when they were engaged in performing their official duties," since such averments "do not negative the possibility that they were doing *other acts than official acts at the time and on this occasion*, or make it clear and specific that whatever was done by them leading to the [state proceeding] was done under color of their federal official duty." *Id*. at 35 (emphasis added). *See also Mesa v. California*, 489 U.S. 121, 135 (1989) (explaining that the phrase "in the performance of his duties," which the FCDO denies is a condition for removal, has the same meaning as "under color of office," which is an explicit element of Section 1442(a)(1)).

Here, since the FCDO effectively admits that its "presence at the place," *Soper*, 270 U.S. at 33, meaning its presence in state court for Johnson's post-conviction proceedings, was not in performance of any official federal duties, it also effectively admits that the motion to disqualify it as counsel in those state-court proceedings was based on "other acts than official acts." *Id*. at 35. *See* Dkt. No. 15, p. 19 ("The FCDO does not contend that its federal contract requires it to

represent Mr. Johnson on his PCRA petition"). That concession alone is enough to require remand.

> B. **The FCDO's defense, that it supposedly funds its extensive state-court practice by private means, does not arise under federal law.**

The nature of the FCDO's asserted "federal defense" is also fatal to its attempt to demonstrate that it is "acting under" a federal officer who in turn is "act[ing] under color of such office," 28 U.S.C. § 1442(a)(1), when it makes state-court appearances that admittedly are not required by its federal contract. In *Commonwealth v. Mitchell*, the principal state case regarding the FCDO's potential disqualification, the Pennsylvania Supreme Court entered an order that the FCDO must be removed from the state-court proceedings if its appearance in state court is federally funded, but may continue to appear in state court upon proof that such appearance is privately funded. Dkt. No. 10, Ex. 4 at pp. 1-2. Similarly, the Commonwealth has drawn the same funding distinction, expressing significant skepticism of the FCDO's claims that it privately finances its state-court activities,[2] but agreeing that "[o]f course there is nothing

---

[2] As the Commonwealth explained to the Pennsylvania Supreme Court in another proceeding that has been removed to this Court:

> Of course the appearance of FCDO counsel as members of the bar of [the Pennsylvania Supreme] Court in good standing would be unobjectionable, if not underwritten by illicit use of federal funds. But there is good reason to raise the question. The Superior Court brief filed by FCDO counsel is identical in form, binding, and appearance to the hundreds of briefs filed by that office in innumerable Pennsylvania cases. … And while the FCDO has at times indicated that, when not federally appointed, it appears in state court only with non-federal funding, this assertion is difficult to credit. For example, the federal appropriation to the FCDO for Pennsylvania federal capital habeas corpus proceedings in fiscal year 2011 was approximately $17.5 million dollars (exclusive of more than $950,000 to litigate capital federal habeas corpus petitions in Delaware). In contrast, the FCDO reportedly has only "about $130,000 in private money for

(continued. . .

4

preventing FCDO lawyers from appearing in state court with non-federal funding." *Mitchell v. Wetzel*, No. 11-cv-02063, Dkt. No. 20 at p. 1 n.1.

To the extent the FCDO has addressed the merits of this controversy, it has not argued that federal law allows it to use federal funds for state court activities. Rather, it has claimed that, in cases in which it has not been appointed to the state court proceedings, it is "retained by the defendant to represent him on a pro bono basis," Dkt. No. 8-1 (Motion to Dismiss), p. 5, *i.e.*, it privately finances its state court appearances. *See also In re Commonwealth v. Mitchell Proceeding*, No. 2:13-cv-01871, Dkt. No. 15, Ex. 5, p. 13, ¶ 30 ("The FCDO has non-federal resources that support its activities that fall outside the scope of section 3599(e). … It has established the Pennsylvania Capital Representation Project, which receives private grant funds and contributions to support FCDO activities the sustaining federal grant cannot fund. Also, FCDO lawyers may voluntarily devote time to state court representation that is separate from, and in addition to, the work that is funded under the federal grant").

---

some state work." The president of the Defender Association, David Rudovsky, Esquire, has stated that "federal money paid for most of the work" the FCDO does in state court and that "federal statutes allowed" this (Nathan Gorenstein, *Castille Reignites Dispute Over Pennsylvania Death-Penalty Appeals*, Phila. Inquirer; May 16, 2011). In other words, the FCDO Capital Habeas Unit generally receives $134.60 in federal money for every $1 it receives in private grants and donations, and indeed, Mr. Rudovsky has been quoted (in a statement that, if accurately reported, must be considered authoritative) as stating that "most of" its state court effort is paid for with "federal money."

The appearance, unfortunately, is that FCDO counsel are illicitly using federal funds to appear in state criminal proceedings, which raises obvious ethical concerns subject to [the Pennsylvnaia Supreme] Court's exclusive supervisory authority.

*In re Christopher Williams Proceeding*, No. 2:13-cv-03038, Dkt. No. 1, Ex. B, p. 7.

But, as would seem obvious, a defense that the FCDO privately funds its state-court activities is not a defense that arises out of its alleged federal officer status (or, more precisely, its alleged "acting under" a federal officer status), so as to justify removal. *See Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969) (federal officer removal covers "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law"). It is, rather, an admission of the self-evident fact that the FCDO is *not* acting as or under a federal officer in state court.

Comparing the FCDO's defense to that at issue in *Jefferson County v. Acker*, 527 U.S. 423 (1999), a case the FCDO describes as "analytically identical" to this one (Dkt. No. 15, p. 19), is instructive. *Jefferson County* involved state actions by a county to collect occupational taxes from federal judges who worked in the county. The judges removed the actions to federal court under Section 1442(a)(3), asserting a defense under the intergovernmental tax immunity doctrine because the occupational tax fell on their performance of federal judicial duties, and therefore plausibly risked interfering with the operation of the federal judiciary. *Jefferson County*, 527 U.S. at 427.

Although not the main focus of the Supreme Court's opinion, the Court noted as a "preliminar[y]" matter that the state proceedings were "for an act under color of office," 28 U.S.C. § 1442(a)(3), because "[t]he essence of the judges' colorable defense is that Jefferson County's Ordinance expressly declares it 'unlawful' for them to 'engage in [their] occupation' without paying the tax, and thus subjects them to an impermissible licensing scheme. The judges accordingly see Jefferson County's enforcement actions as suits 'for' their having 'engage[d] in [their] occupation.'" *Id*. at 427, 432 (citation to local tax ordinance omitted; all other alterations

6

supplied by the Court"). The Court deemed it sufficient that the judge's allegations on that point were plausible, albeit not "airtight," because, under a more demanding burden, the "color of office" requirement would effectively require the removing officer to prove that his federal defense is correct, as opposed to merely colorable. *Id*. Since the conduct giving rise to the state tax-collection proceedings "encompass[ed] holding court in the county and receiving income for that activity," the Supreme Court was "satisfied that the judges have shown the essential nexus between their activity 'under color of office' and the county's demand, in the collection suits, for payment of the local tax." *Id*. at 433.

The situation here is not comparable, much less "analytically identical." At the outset, since Section 1442(a)(3) contains no acting-under-a-federal-officer provision, and the federal judges were obviously federal officers rather than mere federal grantees in any event, *Jefferson County* can provide no guidance as to whether the FCDO is "acting under" a federal officer when it appears in state court to litigate state post-conviction proceedings. Moreover, the judges in *Jefferson County* were asserting an affirmative defense arising out of their duty to sit as federal judges, and thereby attempting to protect a federal interest, whereas the FCDO is merely denying that it committed the charged act of using federal funds in non-federal cases. *See Willingham*, 395 U.S. at 406-07 (federal officer removal covers "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law").[3]

---

[3] This case therefore is also unlike *Cleveland, C. & I. R. Co. v. McClung*, 119 U.S. 454 (1886), where which the removing party claimed that the transaction giving rise to the suit occurred, if at all, in the course of his official federal duties as collector of customs. *See McClung*, 119 U.S. at 266 ("His liability, if any there is, grows out of his official duty to keep the goods, and deliver them to the consignees thereof when the import duties are paid and the carrier's lien discharged. …. [T]he petition alleges an act done by the collector under color of his office, and seeks (continued. . .

7

But even putting aside those significant differences, the FCDO's attempt to analogize this case to *Jefferson County* is misguided. The FCDO attacks a straw man when it asserts that "[i]t is equally true here that to credit for purposes of the motion to remand the Commonwealth's argument that the CJA prohibits community defender organizations and federal defenders from appearing in state court would be 'to decide the merits of the case.' It is the FCDO's position that … [under the CJA] lawyers, including those employed by the FCDO, do not need federal authorization to represent in PCRA proceedings indigent defendants who retain their services." Dkt. No. 15, p. 21. The Commonwealth's position is not that the FCDO "need[s] federal authorization to represent [clients] in PCRA proceedings," but rather that such representation must be (as the FCDO claims it is, and the Pennsylvania Supreme Court has ordered a hearing to determine) financed with non-federal money. *See Mitchell v. Wetzel*, No. 11-cv-02063, Dkt. No.

---

*recovery on that account*. Such a suit is removable … [even though] the collector says in his defense that the act charged was not in fact done[ ] [because] [*i*]*f done by him, it was done under color of his office*") (emphasis added). Here, again, the Commonwealth does not seek the FCDO's state-court removal based on an act arguably done under color of federal office, such as appearance in federal court for federal habeas proceedings. Rather, it seeks the FCDO's removal based on the alleged use of federal funds to finance state-court appearances—something the FCDO effectively admits would be outside the scope of its federal contract, Dkt. No. 15, p. 19, and thus *not* done under color of federal office.

In *Mesa v. California*, 489 U.S. 121 (1989), the Court harmonized its decision in *McClung* with other precedent by describing the federal customs officer's defense as having involved a claim that the pertinent federal statute "does *not* impose certain obligations whose alleged existence forms the basis of a civil suit." *Mesa*, 489 U.S. at 130 (emphasis in original). Under that characterization, *McClung* and this case might be comparable if the FCDO were claiming that federal law does not obligate it to refrain from using federal funds for purely state-court activities. But, again, that is not what the FCDO claims. The FCDO avers that it *does not use federal funds* for such activities, which is more akin to a federal officer charged with the state crime of theft denying that he took the property in question. Were a mere denial of the charged act sufficient to justify federal officer removal, *all* contested state lawsuits and prosecutions against such officers would be removable.

20 at 1 n.1 ("Of course there is nothing preventing FCDO lawyers from appearing in state court with non-federal funding"). It is no "defense" at all—much less a colorable defense bound up in conduct of a federal officer acting "under color of [federal] office"—to merely *agree* with the Commonwealth that non-federal-court representation must be funded with non-federal money.[4]

The situation here is thus a far cry from that in *Jefferson County*. The FCDO notes that, in that case, the four dissenting Justices "argued that non-payment of the tax was not required by the respondents' position as federal judges," Dkt. No. 15, pp. 19-20, but the five Justices in the majority found there was at least a plausible argument for the opposite conclusion. However, contrary to the FCDO's suggestion, that sort of debate is not presented in this case, since there is no disagreement when "the Commonwealth argues here that the appearance in state court of the FCDO's lawyers is not part of their federal duties." *Id*. at p. 20. Again, that is not merely an

---

[4] The FCDO correctly does not mention its actual "federal defenses" in this context, since they are not "colorable defense[s]s *arising out of* [*its*] *duty to enforce federal law*." *Willingham*, 395 U.S. at 406-07 (emphasis added). Unlike the defense at issue in *Jefferson County*, the two defenses the FCDO raised in its motion to dismiss—there, it invoked the private right of action and preemption doctrines—do not arise out of federal-officer status; any defendant or respondent in any action could raise those defenses. The third issue the FCDO raised in its motion to dismiss, the primary-jurisdiction rule, merely concerns which entity should first address the Pennsylvania Supreme Court's *sua sponte* order. It does not provide a "defense" to that order, and, in any event, can be invoked by any litigant, regardless of federal-officer status, so long as the litigant believes his case requires interpretation of complex administrative regulations.

     As for the defenses the FCDO mentioned in its notice of removal but considered too weak or too fact-bound for the motion to dismiss, the First Amendment claim is not tied to the FCDO's alleged federal-officer status, and the equal-protection argument depends on the same mischaracterization of the issue discussed in the text. Again, the Commonwealth does not dispute that the FCDO has the right to appear in state court with non-federal money, and the FCDO does not argue that it has a right, under the Equal Protection Clause or otherwise, to use federal funds for purely state-court activities in state proceedings to which it has not been appointed. Moreover, any (hypothetical) argument for such a right would be far from "colorable."

"argument" by the Commonwealth, to be resolved if and when the Court reaches the stage at which it is considering the merits of the underlying dispute. It is a position the FCDO itself (correctly) takes immediately before offering its misconceived comparison to *Jefferson County*. *See id.* at p. 19 ("The FCDO does not contend that its federal contract requires it to represent Mr. Johnson on his PCRA petition").

Nor does the fact that Section 1442(a)(1) was amended in 2011 to make several changes, including adding the words "or relating to" to the phrase "for or relating to any act under color of such office" change things. Since state-court appearances admittedly are not covered by the FCDO's federal contract, Dkt. No. 15, p. 19, and thus not undertaken under color of federal office, the Pennsylvania Supreme Court's *sua sponte* order raising the possibility of the FCDO's state-court disqualification for allegedly using federal funds to finance those appearances is neither "for" any act under color of federal office nor "relating to" any act under color of federal office. *See* Dkt. No. 15, p. 19 ("The FCDO does not contend that its federal contract requires it to represent Mr. Johnson on his PCRA petition"); *see also In re Commonwealth v. Mitchell Proceeding*, No. 2:13-cv-01871, Dkt. No. 25, p. 20 (FCDO concession in another removed case "that the conduct challenged by the Commonwealth lay outside the scope of the FCDO's federal contractual duties….," and that it therefore has no plausible argument "that in representing Mr. Mitchell in state court, his FCDO lawyers were discharging their federal contractual duties….").

    **C.**    **The FCDO fails to distinguish this case from other situations in which the Supreme Court has held that public defenders are not federal officers and do not act "under color of … law."**

In the Commonwealth's remand motion, it also observed that, "in analogous contexts," albeit not yet in the context of whether public defenders may qualify for federal officer removal,

10

Dkt. No. 10, pp. 6-7, the Supreme Court has already held that public defenders do not act "under color of … law," *Polk County v. Dodson,* 454 U.S. 312, 317-18 (1981), and are not "federal officers" for purposes of the immunity defenses, such as absolute immunity and federal-officer immunity, to which such officers are entitled. *Ferri v. Ackerman*, 444 U.S. 193, 199-200, 205 (1979). The FCDO's response is limited to the general observation that the test for section 1442 removal is broader than the standards for either section 1983 liability or federal immunity. Dkt. No. 15, p. 22.

The FCDO does not even attempt to explain what specific difference it thinks requires this Court to give the phrases "under color of" law/office and "federal officer" different meanings from those the Supreme Court has established in other contexts. The core purpose of both federal-officer doctrines concerns preventing improper disruptions to the functions of the federal government, and removal is indeed a *broader* form of protection for the federal government than federal-officer immunity, since immunity defenses generally can only be asserted in suits for damages based on torts, not in criminal prosecutions or suits for equitable relief. It therefore would be quite odd to conclude that public defenders do not act "under color of law" for purposes of Section 1983 actions, nor do they sufficiently advance the government's interests to justify treating them as "federal officers" for purposes of immunity defenses, but that they nevertheless are "federal officers" who act "under color of such office" for purposes of removal.

**II.    The FCDO's response to the Commonwealth's abstention argument is unavailing.**

Finally, with respect to abstention under *Younger v. Harris,* 401 U.S. 37 (1971), the Commonwealth was correct in its prediction that the FCDO would neither dispute that the three

requirements for such abstention are met here nor attempt to invoke any recognized exception. Rather, as expected, the FCDO has confined itself to the argument that abstention doctrines should be inapplicable in federal officer removal cases because the Court's jurisdiction in such cases is "mandatory." But, as explained in the Commonwealth's motion, Dkt. No. 10, pp. 13-14, jurisdiction is almost never statutorily described as "discretionary" even in non-removal contexts,[5] yet, whenever federal jurisdiction is invoked, the Court still must consider the comity principles at the heart of *Younger*, and abstain from exercising jurisdiction if the requirements of *Younger* apply. *See, e.g., Jefferson County*, 527 U.S. at 435 n. 5 (noting, in case removed pursuant to Section 1442, that "abstention and stay doctrines may counsel federal courts to withhold jurisdiction" in some situations); *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1501-02 (8th Cir. 1992) (concluding, in case removed pursuant to Section 1441, that "the district court had the authority to remand this case to state court based on abstention, a reason not expressly articulated in § 1447(c)"); Franklin D. Cleckley, *Clearly Erroneous: The Fourth Circuit's Decision to Uphold Removal of a State-Bar Disciplinary Proceeding Under the Federal-Officer Removal Statute*, 92 W. Va. L. Rev. 577, 615-21 (Spring 1990) (persuasively arguing that, even in context of case removed pursuant to Section 1442, federal courts should abstain from exercising jurisdiction over state attorney-disciplinary matters).

At one point, the FCDO suggests that the *Younger* doctrine and federal-officer removal are incompatible because the purpose of the latter is to protect federal officers "from the

---

[5] The FCDO misunderstands the Commonwealth to have cited *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), as an example of a case applying the *Younger* doctrine to a removed action. Dkt. No. 15, p. 23, n. 7. To the contrary, the Commonwealth cited *Huffman* as an example of a case applying *Younger* to a matter in which federal jurisdiction was similarly "mandatory" under the terms of the statute at issue—there 28 U.S.C. § 1331, not 28 U.S.C. § 1442. Dkt. No. 10, p. 13.

manipulation of federal law by hostile state authorities…." Dkt. No. 15, p. 15. This argument overlooks the fact that *Younger* does not apply when there is a convincing showing that: (1) the state action was brought in bad faith for the purpose of harassment, *Younger*, 401 U.S. at 50, 53; (2) the law being enforced in the state action is patently unconstitutional, *id*. at 53-54; or (3) the state courts are too biased to provide an adequate forum. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). Even in the rare situation here, where *Younger* applies to a case removed under Section 1442 because the alleged federal officer removed only a discrete portion of a larger state action, federal officers are not left at the mercy of biased state courts, but it is the FCDO's burden to show the existence of such bias—something it does not attempt.

The FCDO also makes an ill-conceived argument that the removed proceeding does not truly implicate any state interest because it would be cheaper to allow the FCDO to appear in state court than to appoint new counsel at state expense. But of course, it would be cheaper for the Commonwealth to take no action in response to most alleged misconduct. For example, the Commonwealth no doubt could save itself money by taking no action when attorneys co-mingle their client's funds with their own, or commit fraud in violation of 62 P.S. §1407(a)(6). However, there is a compelling state interest in ensuring the ethical practice of law, and protecting against fraudulent practices, even when doing so may prove more expensive for the state government than looking the other way.

The FCDO has not carried its burden to establish that that it qualifies for federal-officer removal, but even if removal otherwise would be proper, abstention would be warranted.

**CONCLUSION**

This matter should be remanded to the Court of Common Pleas of Philadelphia County.

|                          | /s/ *Peter Carr* |
|---|---|
|                          | Peter Carr |
|                          | Assistant District Attorney |
|                          | Hugh J. Burns, Jr. |
|                          | Chief, Appeals Unit |
|                          | PHILADELPHIA DISTRICT ATTORNEY'S OFFICE |
|                          | Three South Penn Square |
|                          | Philadelphia, PA 19107 |
|                          | peter.carr@phila.gov |
|                          | hugh.burns@phila.gov |
|                          | (215) 686-5766 |
| Date:   June 20, 2013    | *Attorneys for the Commonwealth* |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCEEDING BEFORE THE COURT : <br> OF COMMON PLEAS OF PHILADELPHIA : <br> TO DETERMINE THE PROPRIETY OF THE : <br> DEFENDER ASSOCIATION OF : <br> PHILADELPHIA'S REPRESENTATION OF : <br> WILLIAM JOHNSON : <br> _____ : <br> COMMONWEALTH OF PENNSYLVANIA, : <br>      Plaintiff, : <br> : <br> v. : <br> : <br> WILLIAM JOHNSON, : <br>      Defendant. : | CIVIL ACTION <br><br><br><br><br><br><br><br><br><br> No. 13-2242 |

## CERTIFICATE OF SERVICE

The Commonwealth's motion to remand and supporting brief have been filed electronically, and are available for viewing and downloading by all counsel of record from the Electronic Case Filing System. In addition, I have caused a copy of the same documents to be served by first-class mail on the following person:

David Richman, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
*Attorney for the Defender Association of Philadelphia*

|  |  |
|---|---|
|  | /s/ *Peter Carr* <br> Peter Carr <br> Assistant District Attorney <br> PHILADELPHIA DISTRICT ATTORNEY'S OFFICE <br> Three South Penn Square <br> Philadelphia, PA 19107 <br> peter.carr@phila.gov |
| June 20, 2013 | (215) 686-5766 |